IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| LANCER INSURANCE COMPANY | § | |
| | § | |
| Plaintiff, | § | |
| | § | NO. 3-04-CV-1835-K |
| VS. | § | |
| | § | (Consolidated With: |
| ERIC ROCKMORE, d/b/a Rockmore | § | No. 3-04-CV-0022-K) |
| Discovery Coaches & Tours, ET AL. | § | |
| | § | |
| Defendants. | § | |

**FINDINGS AND RECOMMENDATION OF THE**
**UNITED STATES MAGISTRATE JUDGE**

This insurance coverage dispute is before the court on cross-motions for summary judgment filed by: (1) Lancer Insurance Company ("Lancer"); and (2) Eric Rockmore, Individually and d/b/a Rockmore Discovery Coaches and Tours ("Rockmore"), joined by the families of 15 passengers who were killed or seriously injured in a bus accident that occurred on June 24, 2002 ("the Passengers"), collectively referred to as "defendants." At issue is whether two commercial auto liability insurance polices issued by Lancer to Rockmore in 1999 and 2001 expired or were canceled prior to the accident made the basis of this suit and, if not, whether Rockmore's failure to timely notify Lancer of claims arising out of the bus accident defeats coverage. For the reasons stated herein, Lancer's motion for summary judgment should be granted and defendants' motion should be denied.

I.

In July 1999, Lancer issued a $5 million commercial auto liability policy to Rockmore Discovery Coaches & Tours of Milwaukee, Wisconsin for the period from July 15, 1999 to July 15,

2000.[1] The policy requires, *inter alia*, Lancer to "pay all sums an 'insured' legally must pay as damages because of 'bodily injury' or 'property damage' to which this insurance applies, caused by an 'accident' and resulting from the ownership, maintenance or use of a covered 'auto.'" (Lancer MSJ App. at 33, § II(A)). When the 1999 Policy expired, Lancer issued renewal policies in 2000 and 2001. (*Id.* at 74-116, 130-78). Both policies provided $5 million in liability coverage to Rockmore Discovery Coaches & Tours Unlimited, Inc. for a 12-month period commencing on July 15, 2000 and July 15, 2001, respectively. (*See id*. at 74-75, 130-31).

On November 14, 2001, Lancer notified Rockmore that the 2001 Policy would be canceled effective November 25, 2001 for non-payment of premium. (*Id.* at 179). Upon receipt of that notice, Rockmore obtained replacement insurance from Republic Western Insurance Company ("RWIC"). (*Id.* at 191-92, Req. #24 & 25).[2] The RWIC Policy, which was effective from December 4, 2001 to December 4, 2002, provided liability coverage in the amount of $5 million as required by federal law. (*Id.*).[3] Lancer subsequently notified federal transportation authorities that the 2001 Policy had been canceled effective December 30, 2001. (*Id.* at 184). However, no such notice was sent to the Wisconsin Department of Insurance or the Texas Department of Transportation. (*Id.* at 18, ¶ 6; *see also* Def. MSJ App. at 64-65, Req. #6, 8 & 9).

---

[1] Rockmore owns various charter bus companies that are engaged in the business of transporting passengers in interstate and intrastate commerce. The Rockmore companies operate under several different names, including Odyssey Trails & Odyssey Trails Charter Coaches, Inc., Rockmore's Discovery Tours, Rockmore's Discovery Coaches, Inc., and Discovery Tours of Texas Unlimited, often using the names interchangeably.

[2] On March 9, 2005, Lancer served requests for admission on counsel for Rockmore. (Lancer MSJ App. at 185, ¶ 2). Rockmore failed to answer the requests as required by Fed. R. Civ. P. 36(a). As a result, the requests are deemed admitted. *See Eber v. Harris County Hospital Dist.*, 130 F.Supp.2d 847, 853 (S.D. Tex. 2001). Deemed admissions may serve as the basis for a summary judgment. *In re Carney*, 258 F.3d 415, 419 (5th Cir. 2001).

[3] The United States Department of Transportation requires private interstate motor carriers, such as Rockmore, to maintain at least $5 million in liability insurance and to obtain proof of such insurance in the form of an MCS-90 endorsement. *See* 49 C.F.R. §§ 387.7(a), (d) & 387.9.

On June 24, 2002, a bus driven by a Rockmore employee slammed into a concrete pillar supporting an overpass on Interstate Highway 20 in Kaufman County, Texas. The driver and four teenage members of a church youth group died in the crash. Approximately 35 other passengers were injured. Shortly after the bus accident, multiple lawsuits were filed against Rockmore in Texas state court. Rockmore never notified Lancer of these claims. Instead, he notified RWIC of the lawsuits and demanded a defense and indemnification under the terms of that policy. RWIC initially denied coverage, but eventually agreed to defend Rockmore in the underlying litigation subject to a reservation of rights.

Beginning in January 2004, attorneys for passengers who were injured or killed in the bus accident made settlement demands on Lancer under the various insurance policies issued to Rockmore. (Def. MSJ App. at 124, 126-28). Lancer rejected each of those demands on the ground that none of the policies were in effect at the time of the accident. (*Id.* at 125, 134, 140-42). On August 23, 2004, Lancer filed this action in federal district court seeking a declaration that none of the policies issued to Rockmore were in effect at the time of the bus accident or, alternatively, that Rockmore failed to provide timely notice of the accident as required by the policies. Defendants counter that neither the 1999 Policy nor the 2001 Policy was properly canceled and, therefore, coverage exists under those policies for the claims made the basis of the underlying state court lawsuits. The Passengers, as assignees of Rockmore, also assert counterclaims against Lancer under *Stowers*,[4] the Texas Insurance Code, and the Texas Deceptive Trade Practices Act. The case is before the court on cross-motions for summary judgment. The issues have been fully briefed by the parties and the motions are ripe for determination.

---

[4] *Stowers v. American Indemnity Co.*, 15 S.W.2d 544 (Tex. Comm'n App. 1929, holding approved).

II.

Summary judgment is proper when there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c); *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). A dispute is "genuine" if the issue could be resolved in favor of either party. *Matsushita Electric Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986). A fact is "material" if it might reasonably affect the outcome of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). Cases involving the interpretation of insurance policies are particularly appropriate for summary disposition. *See Principal Health Care of Louisiana, Inc. v. Lewer Agency, Inc.*, 38 F.3d 240, 242 (5th Cir. 1994); *SnyderGeneral Corp. v. Great American Insurance Co.*, 928 F.Supp. 674, 677 (N.D. Tex. 1996) (Kaplan, J.), *aff'd*, 133 F.3d 373 (5th Cir. 1998).

Where, as here, a case is presented by way of cross-motions for summary judgment, each movant has the burden of producing evidence to support its motion. A movant who bears the burden of proof at trial must establish "beyond peradventure all of the essential elements of the claim or defense to warrant judgment in his favor." *Chaplin v. NationsCredit Corp.*, 307 F.3d 368, 372 (5th Cir. 2002), *quoting Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1194 (5th Cir. 1986). By contrast, a party seeking summary judgment who does not have the burden of proof at trial need only point to the absence of a genuine fact issue. *See Duffy v. Leading Edge Products, Inc.*, 44 F.3d 308, 312 (5th Cir. 1995). Once the movant meets its initial burden, the non-movant must show that summary judgment is not proper. *See Duckett v. City of Cedar Park*, 950 F.2d 272, 276 (5th Cir. 1992). The parties may satisfy their respective burdens by tendering depositions, affidavits, and other competent evidence. *See Topalian v. Ehrman*, 954 F.2d 1125, 1131 (5th Cir.), *cert. denied*, 113 S.Ct. 82

(1992). All evidence must be viewed in the light most favorable to the party opposing the motion. *See Rosado v. Deters*, 5 F.3d 119, 122 (5th Cir. 1993).

III.

Lancer argues that there is no coverage under the insurance policies issued to Rockmore because: (1) the 1999 Policy expired by its terms; and (2) the 2001 Policy was canceled or, alternatively, Rockmore obtained replacement coverage prior to the date of the bus accident. Defendants maintain that: (1) fact issues preclude summary judgment with respect to the 1999 Policy; (2) Lancer's attempt to cancel the 2001 Policy was unauthorized and void under the terms of the policy and applicable state law; and (3) Lancer was not prejudiced by the failure to provide prompt notice of the state court lawsuits.

A.

As a preliminary matter, the court must decide whether Texas or Wisconsin law governs the substantive issues presented in this case. A federal court sitting in diversity must apply the choice-of-law rules of the forum state. *Klaxon Co. v. Stentor Electric Manufacturing Co.*, 313 U.S. 487, 496, 61 S.Ct. 1020, 1021, 85 L.Ed. 1477 (1941). Under Texas law:

> Any contract of insurance payable to any citizen or inhabitant of this State by any insurance company or corporation doing business within this State shall be held to be a contract made and entered into under and by virtue of the laws of this State relating to insurance, and governed thereby, notwithstanding such policy or contract of insurance may provide that the contract was executed and the premiums and policy (in case it becomes a demand) should be payable without this State, or at the home office of the company or corporation issuing the same.

TEX. INS. CODE ANN. art. 21.42 (Vernon 1981). *See also Westcott Holdings, Inc. v. Monitor Liability Managers, Inc.*, Civ. A. No. H-05-1945, 2005 WL 2206196 at *2 (S.D. Tex. Sept. 12, 2005) (recognizing that "Texas applies its own law to any contract of insurance payable to any

citizen of Texas by an insurance company doing business within Texas"). Lancer was authorized to sell insurance in Texas at all times relevant to this suit.[5] Although the various insurance policies at issue list a Wisconsin address for Rockmore and contain several Wisconsin-specific endorsements, Rockmore moved to Texas in late 2001. (Lancer MSJ App. at 7). Shortly thereafter, he relocated his business operations, including the bus involved in the accident, to this state. (*Id.* at 8). The accident for which Rockmore seeks coverage occurred in Texas and the lawsuits resulting from such accident were filed in Texas state court. The court therefore determines that Texas law applies.

B.

Lancer first argues that the 1999 Policy expired by its terms on July 15, 2000. Under the terms of that policy, coverage exists only for "accidents" and "losses" occurring "[d]uring the policy period shown in the Declarations." (*Id.* at 39, § IV(B)(7)). The declaration page specifies that the policy period commences on July 15, 1999 and expires on July 15, 2000. (*Id.* at 20). The bus accident for which coverage is sought occurred on June 24, 2002--nearly *two years* after the expiration date specified in the declarations.

In an attempt to create a fact issue with respect to coverage under the 1999 Policy, defendants point to a letter from the Wisconsin Department of Transportation ("WDOT") as evidence that the policy remains in full force and effect even today. (*See* Def. MSJ Br. at 22). However, the letter states only: (1) that Rockmore obtained insurance on April 17, 2000; (2) that he has blanket coverage under the 1999 Policy; and (3) that the policy has not been canceled as of April 4, 2005. (Lancer MSJ App. at 196). That Lancer never "canceled" the 1999 Policy is entirely

---

[5] According to the Texas Department of Insurance, Lancer has been licensed to sell insurance in Texas since 1947. *See* http://www.tdi.state.tx.us/ (follow "Insurer Search" hyperlink; then enter "Lancer;" then follow "Lancer Insurance Company" hyperlink).

consistent with Wisconsin law, which provides:

> No certificate or other contract filed under this section . . . may be terminated at any time *prior to its expiration under the terms thereof*, nor canceled for any reason whatever, unless there has been filed with the department [of transportation] by the insurer a notice thereof at least 30 days prior to the date of termination or cancellation.

WIS. STAT. ANN. § 194.41(2) (2002) (emphasis added).  Lancer was not required to file a notice of cancellation with WDOT because the 1999 Policy expired by its terms on July 15, 2000.  The letter relied on by defendants is not sufficient to create a fact issue with respect to coverage under this expired policy.

C.

Lancer further contends that the 2001 Policy was canceled effective November 25, 2001--nearly seven months prior to the date of the bus accident.  Cancellation is an affirmative defense which must be proved by Lancer at trial.  *See Shaller v. Commercial Standard Insurance Co.*, 309 S.W.2d 59, 66 (Tex. 1958); *Anchor Casualty Co. v. Crisp*, 346 S.W.2d 364, 367 (Tex. Civ. App.--Amarillo 1961, no writ).  In order to obtain summary judgment on this ground, Lancer must conclusively establish that it strictly complied with the cancellation provisions of the policy and Texas law.

1.

The 2001 Policy contains a special endorsement governing the procedures for cancellation and nonrenewal.  Under this endorsement, Lancer may cancel the policy by "mailing or delivering to the first Named Insured written notice of cancellation at least 10 days before the effective date of cancellation." (Lancer MSJ App. at 166).  If the policy is a renewal or has been in effect for 60 days or more, it may be canceled only for one or more of the following reasons, which reason or reasons must be stated in the notice of cancellation:

> a. The policy was obtained by material misrepresentation;
>
> b. There has been a substantial change in the risk we originally assumed, except to the extent that we should have foreseen the change or considered the risk in writing the policy;
>
> c. There have been substantial breaches of contractual duties, conditions or warranties; or
>
> d. Nonpayment of premium.

(*Id.*). The general cancellation provisions of the policy require Lancer to mail or deliver the cancellation notice to the named insured at his last known mailing address. Proof of mailing is sufficient proof of notice. Upon cancellation, any unearned premiums must be refunded on a pro rata basis, but "[t]he cancellation will be effective even if we have not made or offered a refund." (*See id.* at 163). These policy provisions comply with Texas law. *See* TEX. INS. CODE ANN. § 551.053 (Vernon Supp. 2004) ("Not later than the 10th day before the date on which the cancellation of a liability insurance policy takes effect, an insurer must deliver or mail written notice of the cancellation to the first-named insured under the policy at the address shown on the policy.").

The 2001 Policy also contains a Form F --Uniform Motor Carrier Bodily Injury and Property Damage Liability Insurance Endorsement. (*Id.* at 171). With respect to cancellation, Form F provides:

> This endorsement may not be canceled without cancellation of the policy to which it is attached. Such cancellation may be effected by the company or the insured giving thirty (30) days' notice in writing to the State Commission with which such Certificate has been filed, such thirty (30) days' notice to commence to run from the date the notice is actually received in the office of such Commission.

(*Id.*). The reverse side of the Form F endorsement indicates that certificates of insurance were filed with transportation authorities in Arkansas, Florida, Minnesota, Missouri, Nebraska, Ohio,

Tennessee, Texas, and Wisconsin. (*Id.* at 172). Therefore, in order to cancel the endorsement, Lancer must give at least 30 days written notice to each of those states.

2.

Lancer complied with the general cancellation requirements of the policy and Texas law. A notice of cancellation was mailed to Rockmore at his address on November 14, 2001. The notice advises that the policy will be canceled effective November 25, 2001 for nonpayment of premium. (*See id.* at 179-81). Lancer also sent a notice of cancellation to federal transportation authorities. (*Id.* at 184). However, no such notice was sent to any of the states listed in the Form F endorsement. (*See id.* at 18, ¶ 6; Def. MSJ App. at 69-75). Defendants insist that the failure to comply with the cancellation requirements of the endorsement means that the 2001 Policy remains in effect.

3.

Texas law requires that each motor carrier operating in this state obtain liability insurance in at least the minimum amount prescribed by administrative regulation. *See* TEX. TRANSP. CODE ANN. § 643.101 (Vernon Supp. 2005).[6] Motor carriers may satisfy this requirement by obtaining a Form F endorsement to its liability insurance policy. Form F provides, in pertinent part:

> The certification of the policy, as proof of financial responsibility under the provisions of any State motor carrier law or regulations promulgated by ay State Commission having jurisdiction with respect thereto, amends the policy to provide insurance for automobile bodily injury and property damage liability in accordance with the provisions of such law or regulations to the extent of the coverage and limits of liability required thereby[.]

(Lancer MSJ App. at 171). The motor carrier must certify compliance with these insurance requirements by filing a Form E certificate, identifying its Form F insurer, with the Texas

---

[6] Under the single state registration system for motor carriers established by federal law, participating states, such as Texas and Wisconsin, may accept proof of insurance filed with federal transportation authorities. *See* 49 U.S.C. § 14504, *repealed by* PL 109-59, 119 Stat. 1144 (Aug. 10, 2005).

Department of Transportation. *See* TEX. TRANSP. CODE ANN. §§ 643.051 & 643.103. The purpose of the Form F endorsement and the Form E certificate are "to ensure that liability insurance is always available for the protection of motorists injured by commercial motor carriers." *National Casualty Co. v. Lane Exp., Inc.*, 998 S.W.2d 256, 265 (Tex. App.--Dallas 1999, pet. denied).

When an insurance policy is amended by a Form F endorsement, the coverage provided by the endorsement remains in effect unless it is canceled in a manner prescribed by state law. *See Northland Insurance Co. v. New Hampshire Insurance Co.*, 63 F.Supp.2d 128, 130 (D.N.H. 1999). However, a Form F endorsement is canceled automatically, whether or not the insurer complies with the cancellation requirements, if the policyholder purchases "replacement" insurance. 43 TEX. ADMIN. CODE ANN. § 18.16(f) ("Except when replaced by another acceptable form of insurance coverage or proof of financial responsibility approved by the department, no insurance coverage, surety bond, or letter of credit shall be canceled or withdrawn until 30 days after notice has been given to the department by the insurance or surety company . . ."); *see also* WIS. STAT. ANN. § 194.41(2) (2002) ("The 30-day notice may be waived if an acceptable replacement has been filed under this section.").

In a prior decision in a related case, this court determined that the RWIC policy was in full force and effect on the date of the bus accident and provided coverage for the claims asserted in the state court lawsuits. *See Republic Western Insurance Co. v. Rockmore*, No. 3-02-CV-1569-BD, 2005 WL 57284 at *5 (N.D. Tex. Jan. 10, 2005) (Kaplan, J.). The RWIC policy provided liability coverage in the amount of $5 million--the minimum required by federal law. Because Rockmore obtained a replacement policy and there was no gap in coverage, Lancer was not required to comply with the cancellation procedures of the Form F endorsement. *See, e.g. Truck Insurance Exchange v. E.H. Martin, Inc.*, 876 S.W.2d 200, 203 (Tex. App.--Waco 1994, writ denied) (insurer need not

comply with cancellation procedures of Form F endorsement if another insurance company has provided common carrier with replacement coverage); *Wolcott v. Trailways Lines, Inc.*, 774 So.2d 1054, 1061 (La. Ct. App. 2000) (same); *Country Mutual Insurance Co. v. Millers National Insurance Co.*, 534 N.E.2d 151, 155-56 (Ill. App. Ct. 1989) (same); *Canal Insurance Co. v. Insurance Co. of North America*, 424 So.2d 749, 750 (Fla. 1982) (same). *But see Fireman's Fund Insurance Co. v. Allstate Insurance Co.,* 234 Cal.App.3d 1154, 1166, 286 Cal.Rptr. 146 (1991) (where insurer failed to provide state transportation authorities with notice of cancellation, policy remained in full force and effect despite existence of other insurance with same policy limits).

This result is entirely consistent with federal law. The United States Department of Transportation requires interstate motor carriers to maintain at least $5 million in liability insurance, and to obtain proof of such insurance in the form of an MCS-90 endorsement,[7] to ensure that the carrier has independent financial responsibility to pay for losses sustained by the general public arising out of its operations. *See* 49 C.F.R. §§ 387.7(a), (d) & 387.9; *Travelers Insurance Co. v. Transport Insurance Co.*, 787 F.2d 1133, 1139 (7th Cir. 1986). In order to effect cancellation of an MCS-90 endorsement, the insurer must provide at least 35 days written notice to the insured and at least 30 days written notice to the Federal Motor Carriers Safety Administration. *See* 49 C.F.R. §§ 387.7(b)(1) & 387.313(d). However, an MCS-90 endorsement is subject to automatic cancellation, notwithstanding the failure to comply with these notice requirements, if the insured purchases replacement insurance. *See id.* § 387.7(c). The policy considerations underlying the MCS-90 and Form F endorsements are the same--to ensure that liability insurance is available to protect motorists injured by commercial carriers. Federal law is satisfied so long as one insurance policy provides

---

[7] An MCS-90 endorsement makes an insurer liable to third parties for any liability resulting from the negligent use of any motor vehicle by the insured, even if the vehicle is not covered under the insurance policy. *See T.H.E. Insurance Co. v. Larsen Intermodal Services, Inc.*, 242 F.3d 667, 671 (5th Cir. 2001).

such coverage. The same is true under Texas law.

Because the RWIC policy was in effect at the time of the bus accident and provided coverage to injured claimants in the amount required by federal and state law, the Form F endorsement was automatically canceled. The court therefore determines that no coverage exists under the 2001 Policy or the Form F endorsement attached thereto.[8]

D.

Lancer also seeks summary judgment with respect to defendants' extra-contractual claims under: (1) *Stowers*, (2) Tex. Ins. Code Ann. § 541.001, *et seq.*,[9] and (3) Tex. Bus. & Comm. Code Ann. § 17.41, *et seq.* An insured has no cause of action under *Stowers* unless the insurer unreasonably refuses to settle a claim within the scope of coverage. *See American Physicians Insurance Exchange v. Garcia*, 876 S.W.2d 842, 849 (Tex. 1994). Similarly, "there can be no claim for bad faith when an insurer has promptly denied a claim that is in fact not covered." *Ghoman v. New Hampshire Insurance Co.*, 159 F.Supp.2d 928, 935 (N.D. Tex. 2001) (Kaplan, J.), *quoting Republic Insurance Co. v. Stoker*, 903 S.W.2d 338, 341 (Tex. 1995). The court has previously determined that no coverage exists under the 1999 Policy or the 2001 Policy for claims arising out of the bus accident. Consequently, the extra-contractual claims against Lancer fail as a matter of law.

**RECOMMENDATION**

The court determines that: (1) the 1999 Policy expired by its terms on July 15, 2000; (2) the 2001 Policy was canceled effective November 25, 2001; (3) Lancer's failure to comply with the

---

[8] The resolution of this threshold coverage issue pretermits consideration of Lancer's alternative argument based on lack of notice.

[9] Effective April 1, 2005, Tex. Ins. Code Ann. art. 21.21, which prohibited certain unfair and deceptive practices in business of insurance, was repealed and recodified as Tex. Ins. Code. Ann. § 541.001, *et seq.* This recodification did not result in any material substantive changes to the right of private action under the statute.

notice requirements of the 2001 Policy does not invalidate cancellation of that policy because Rockmore obtained replacement insurance from RWIC and there was no gap in coverage; and (4) neither Rockmore nor his assignees may sue Lancer under *Stowers*, Tex. Ins. Code Ann. § 541.001, *et seq.*, or Tex. Bus. & Comm. Code Ann. § 17.41, *et seq*. Accordingly, Lancer's motion for summary judgment should be granted and defendants' motion for summary judgment should be denied.

A copy of this report and recommendation shall be served on all parties in the manner provided by law. Any party may file written objections to the recommendation within 10 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). The failure to file written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Services Automobile Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

DATED: October 14, 2005.

JEFF KAPLAN
UNITED STATES MAGISTRATE JUDGE